IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JU MAO, :

    Plaintiff,

v. : Case No. 3:22-cv-201

FOREST MITCHELL BRIGHT, : JUDGE WALTER H. RICE

    Defendant. :

---

DECISION AND ENTRY SUSTAINING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DOC. #9); ORDERING DEFENDANT TO MAKE MONTHLY PAYMENTS TO PLAINTIFF PENDING RESOLUTION OF THIS LITIGATION AND TO PAY $13,806.00 IN LEGAL FEES ASSOCIATED WITH THIS MOTION

---

Plaintiff, Ju Mao, a citizen of the People's Republic of China and lawful permanent resident of the United States, filed suit against her estranged husband, Defendant, Forest Mitchell Bright, a United States citizen, seeking to enforce his contractual obligation, as her immigration sponsor, to provide a level of financial support in the amount of 125% of the applicable Federal Poverty Guideline. The action arises under the Immigration and Nationality Act, 8 U.S.C. § 1183a, governing enforceability of an immigration sponsor's Affidavit of Support.

This matter is currently before the Court on Plaintiff's Motion for Preliminary Injunction, Doc. #9. The parties have agreed that the Court can resolve this motion without a hearing.

I.     **Background and Procedural History**

Plaintiff and Defendant were married in Wuhan, China, on May 2, 2013, and have one son together. In November of 2015, Plaintiff was admitted to the United States on a B-2 category visa. In October of 2016, Defendant filed a Visa Petition so that Plaintiff could become a permanent resident of the United States. Along with that Visa Petition, Defendant signed a Form I-864 "Affidavit of Support." Doc. #1-1.

Federal law prohibits the entry of immigrants who are likely to become a "public charge," *i.e.,* a person dependent on public benefits. Accordingly, for family-based immigrant visa applicants, the Government requires a sponsor to sign an I-864 Affidavit of Support. 8 U.S.C. § 1182(a)(4)(C). Therein, the sponsor agrees to provide financial support necessary to maintain the sponsored alien at an annual income that is not less than 125% of the Federal Poverty Guideline. *See* 8 U.S.C. § 1183a(a)(1)(A). The Affidavit of Support is a legally-binding contract between the federal government and the sponsor, and may be enforced by the immigrant, who is the third-party beneficiary. 8 U.S.C. §1183a(a)(1)(B).

The sponsor's financial obligation continues until one of five termination events occurs: (1) the beneficiary becomes a U.S. citizen; (2) the beneficiary can receive credit for 40 quarters of work under the Social Security Act; (3) the beneficiary is no longer a permanent resident and has departed the United States; (4) the beneficiary is subject to an order of removal but receives a new grant of adjustment of status based on a new affidavit of support; or (5) the beneficiary

2

dies. 8 C.F.R. §213a.2(e)(2)(i). The I-864 Affidavit of Support specifically states that divorce does not terminate the sponsor's financial obligation.

Plaintiff's Visa Petition and Residency Application were approved on February 16, 2017, on which date Plaintiff became a U.S. resident. Plaintiff and Defendant ceased living together in July of 2018, and were legally separated in June of 2019. *See* Doc. #20-1. In the Separation Agreement, which was incorporated in the Final Judgment Entry and Decree of Legal Separation, they each waived their rights to spousal support. *Id.* at PageID#349.

Since 2018, Plaintiff has earned some money cleaning, cooking and teaching Chinese to a friend's child. Doc. #10, PageID##118-19. However, her monthly income consistently falls significantly below 125% of the Federal Poverty Guideline of $1416.00 for a household of one. She is receiving food assistance benefits under the Supplemental Nutrition Assistance Program. She has also received some benefits under the Ohio Department of Development's Energy Assistance program. She is sharing a house with another person because she cannot afford an apartment. A bicycle is her only means of transportation. *Id.* at PageID#119-21.

Defendant has not complied with his financial obligations under the I-864 Affidavit of Support. On May 3, 2022, Plaintiff's counsel contacted him, seeking $47,088 in unpaid support, $2,000 in attorney fees, and an agreement to commence monthly support payments. Doc. #11-4. Although some negotiations took place, they did not reach a resolution. *See* Doc. #11-5. In June of 2022,

3

Defendant filed a Complaint for Divorce in the Greene County Court of Common Pleas. *See* Doc. #20-2.

Plaintiff has not sought to enforce the I-864 Affidavit of Support in the context of the pending divorce proceedings. Nor does she intend to do so. *See* Doc. #22, PageID#396; Doc. #23. She believes that her federally-codified rights may be better protected in federal court. Accordingly, on July 27, 2022, Plaintiff filed the above-captioned action against Defendant, asking the Court to enforce his financial obligations as set forth in the I-864 Affidavit of Support.

Plaintiff alleges that, since 2018, Defendant has failed to provide her with the requisite financial support.[1] She alleges breach of contract and seeks actual damages in the amount of $42,127 through December 31, 2021, and an amount equal to 125% of the Federal Poverty Guideline minus her income for the period from January 1, 2022, through the date of the judgment. In addition, she seeks declaratory judgment, specific performance, and attorney fees and costs. Doc. #1.

After this lawsuit was filed, Plaintiff's counsel again attempted to gain Defendant's voluntary compliance. *See* Doc. #11-5. When that proved

---

[1] More specifically, Plaintiff alleges that, in 2018, although 125% of the Federal Poverty Guideline was $15,175, she earned only $4,351. In 2019, although 125% of the Federal Poverty Guideline was $15, 612, she earned only $9,750. In 2020, although 125% of the Federal Poverty Guideline was $15, 950, she earned only $1,572. In 2021, although 125% of the Federal Poverty Guideline was $16,100, she earned only $5,037. This results in a total shortfall of $42,147. Doc. #1, PageID#17. Plaintiff also alleges that her monthly income thus far in 2022 has fallen below 125% of the Federal Poverty Guideline.

4

unsuccessful, Plaintiff filed a Motion for Preliminary Injunction, Doc. #9. That motion is now fully briefed. *See* Docs. ##20, 21. Plaintiff asks the Court to issue a preliminary injunction, compelling Defendant to make monthly payments sufficient to raise her monthly income to $1416.00 (125% of the Federal Poverty Guideline for a household of one) until this case is resolved. She also asks that the Court require no bond, given her current financial situation, and that the Court award attorney fees associated with the Motion for Preliminary Injunction.

## II.     **Defendant's Arguments**

In his Memorandum in Opposition to the Motion for Preliminary Injunction, Doc. #20, Defendant argues that, for a variety of reasons, it would be inappropriate for the Court to grant Plaintiff's request for injunctive relief. He relies on the doctrines of waiver, *res judicata*, collateral estoppel and abstention. Defendant also argues that federal law does not sanction preliminary injunctive relief as a remedy in an I-864 enforcement action.

### A.     **Waiver, *Res Judicata* and Collateral Estoppel**

In the Final Judgment Entry and Decree of Legal Separation, Defendant and Plaintiff both waived any rights to "spousal support, which either spouse may now have or ever acquire against the other." Doc. #20-1. Defendant maintains that this waiver must be interpreted to also include a waiver of Plaintiff's rights as a third-party beneficiary of the I-864 Affidavit of Support.

The Court disagrees. Defendant's financial obligations as Plaintiff's immigration sponsor under federal law exist completely independent of any obligations to pay spousal support under state divorce laws. *See Liu v. Mund*, 686 F.3d 418, 419-20 (7th Cir. 2012) ("[t]he right of support conferred by federal law exists apart from whatever rights [a sponsored immigrant] might or might not have under [state] divorce law.").

Notably, an immigration sponsor need not be the spouse or intended spouse of the immigrant. Any citizen or national of the United States over the age of 18, who is domiciled in the United States and can demonstrate the financial means to support the sponsored alien can serve as an immigration sponsor. 8 U.S.C. § 1183a(f). The parties' marital status is therefore largely irrelevant to an I-864 claim. Moreover, the I-864 Affidavit of Support specifically states that divorce will not terminate the sponsor's financial obligations.

The vast majority of courts have held likewise. *See Erler v. Erler*, 824 F.3d 1173, 1177 (9th Cir. 2016) (holding that, under federal law, neither a divorce judgment nor a premarital agreement may terminate an obligation of support under I-864).[2] As explained in *Golipour v. Moghaddam*, 438 F. Supp. 3d 1290 (D. Utah 2020):

---

[2] *But see Blain v. Herrell*, No. 10-00072, 2010 WL 2900432 (D. Haw. July 21, 2010) (holding that the immigrant waived his right to all forms of support in a pre-marital agreement and therefore could not enforce the I-864 Affidavit of Support, which was executed by the Defendant one year later).

6

> [t]o permit a sponsor to unilaterally terminate the Form I-864's financial support obligation through a separate agreement with the immigrant would ignore the interests of the U.S. Government and the benefits of taxpayers and charitable donors. It would also defeat the Form I-864's purpose of preventing admission of an immigrant that is likely to become a public charge at any time. Therefore, nuptial agreements will not terminate a Form I-864's financial support obligation.

*Id.* at 1299.

For these reasons, the Court finds that Plaintiff's waiver of the right to "spousal support" under Ohio law cannot be construed as a waiver of her right to enforce Defendant's financial obligations under the I-864 Affidavit of Support.

Defendant next argues that the doctrine of *res judicata* or claim preclusion bars relitigation of the parties' respective financial support obligations, which were fixed by the Greene County Court of Common Pleas in the Final Judgment Entry and Decree of Legal Separation.

The law of the forum state determines the preclusive effect of a prior state court judgment on Plaintiff's federal claims. *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001). Under Ohio law, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 382 (1995). A "transaction" is defined as a "common nucleus of operative facts." Restatement of Judgments, § 24, comment b.

7

Although the Final Judgment Entry and Decree of Legal Separation constitutes a valid, final judgment rendered upon the merits, the case at bar does not arise out of the transaction or occurrence that was the subject matter of the previous action. The previous action concerned the parties' legal separation and the decree set forth the parties' rights and obligations as a previously-married couple. In contrast, the federal lawsuit concerns Defendant's alleged breach of his financial obligations as Plaintiff's immigration sponsor. Because the two actions do not have a common nucleus of operative facts, the doctrine of *res judicata* does not bar Plaintiff's I-864 claim.

Defendant also argues that the doctrine of collateral estoppel or issue preclusion bars Plaintiff's claims, because any requested modification of the Final Judgment Entry and Decree of Separation can be addressed in the context of the ongoing divorce proceedings. On September 19, 2022, the Greene County Common Pleas Court, Domestic Relations Division, found that Mr. Bright was not required to pay temporary spousal support. Doc. #26-1.

Under Ohio law, "[c]ollateral estoppel (issue preclusion) prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit." *Thompson v. Wing* (1994), 70 Ohio St. 3d 176, 183. Collateral estoppel, however, applies only "when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Id.*

8

Given that Plaintiff did not, and will not, seek to enforce Defendant's I-864 financial support obligations in the state court divorce proceedings, it cannot be said that the issue was "actually and directly litigated in the prior action." Accordingly, the doctrine of collateral estoppel does not apply either.

For the reasons stated above, the Court rejects Defendant's argument that the doctrines of waiver, *res judicata* and/or collateral estoppel bar Plaintiff's federal claims.

**B.     Abstention**

Defendant correctly notes that federal courts do not have exclusive jurisdiction over I-864 enforcement actions. Accordingly, Plaintiff *could* ask the domestic relations court to enforce Defendant's financial obligations under the I-864 in the context of the divorce proceedings.

Defendant maintains that filing a separate suit in federal court results in the duplication of judicial resources and the risk of inconsistent rulings. Citing the "parallel litigation" pending in state court, he therefore asks the Court to abstain from exercising its jurisdiction over Plaintiff's federal claim. *See Younger v. Harris*, 401 U.S. 37 (1971) (holding that federal courts must abstain from exercising jurisdiction when doing so would interfere with pending state court proceedings).

Abstention is not warranted in this case. As previously discussed, Defendant's obligations of spousal support under Ohio divorce law are completely separate from his financial obligations as Plaintiff's immigration sponsor. This

9

Court's adjudication of Defendant's alleged breach of his obligations under the I-864 Affidavit of Support will not in any way interfere with the pending divorce proceedings. Nor is there any risk of inconsistent rulings, given that Plaintiff has not raised the issue of the Affidavit of Support in the divorce proceedings and does not intend to do so.

Accordingly, there is no valid reason for the Court to abstain from exercising jurisdiction over Plaintiff's I-864 enforcement action.

### C. Availability of Injunctive Relief in I-864 Enforcement Action

Defendant further argues that injunctive relief is not specifically authorized in an I-864 enforcement action. He notes that available statutory remedies include judgment liens, writs of execution, installment payment orders, garnishment, specific performance, and corresponding remedies available under State law. *See* 8 U.S.C. § 1183a(c).

Plaintiff maintains, however, that the court has inherent authority to grant injunctive relief even if not explicitly authorized by § 1183a(c). The Court agrees. In at least two cases, courts have granted preliminary injunctive relief and ordered immigration sponsors to provide financial support during the pendency of litigation involving I-864 Affidavits of Support. *See, e.g., Sultana v. Hossain*, 575 F. Supp. 3d 696 (N.D. Tex. 2021); *Jubber v. Jubber*, 1:19-cv-717, 2019 WL 2304656 (D. Md. May 30, 2019).

### III. Preliminary Injunction Factors

Having rejected Defendant's arguments based on waiver, *res judicata*, collateral estoppel, abstention and the availability of the remedy sought, the Court moves on to consider the relevant factors for granting preliminary injunctive relief under Fed. R. Civ. P. 65(1).

In determining whether to grant a motion for a preliminary injunction, the Court must consider: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005) (quotation omitted).

#### A. Likely to Succeed on the Merits

The first factor to be considered is whether Plaintiff is likely to succeed on the merits of her claims. Plaintiff alleges that there is a virtual certainty that she will prevail. It is undisputed that Defendant is contractually obligated to provide her with a level of financial support equal to no less than 125% of the Federal Poverty Guidelines. Plaintiff maintains that, since July of 2018, he has breached his duty to do so. There is no question that her income falls below 125% of the Federal Poverty Guideline for a household of one. The divorce proceedings do not relieve Defendant of his obligations, and no other qualifying termination event has occurred.

Defendant does not deny that he signed the Affidavit of Support or that he is contractually obligated to provide her with a certain level of financial support. Nor does he deny that he has failed to honor his obligations. The Court therefore finds that Plaintiff is likely to succeed on the merits of her claims.

### B.     Irreparable Injury

The second factor to be considered is whether Plaintiff will suffer irreparable injury if injunctive relief is not granted. She currently lives far below 125% of the Federal Poverty Guidelines for a household of one, and is dependent on public assistance. She is unable to meet the "most basic day-to-day needs." Doc. #10, PageID#119. Not only has she been ordered to pay $81.60 per month to Defendant in child support, but the attorney representing her in the divorce proceedings and custody dispute has threatened to withdraw if she does not pay an additional retainer. Doc. #27. She argues that, unless Defendant complies with his financial obligations, she will suffer irreparable injury by having to live in poverty.

Defendant argues that Plaintiff will not suffer irreparable injury because she has an adequate remedy at law in the context of the pending divorce proceedings. However, as previously noted, she has not sought to enforce Defendant's obligations as her immigration sponsor in state court and is not required to do so.

The Court finds that Plaintiff's current financial situation is dire and that she will suffer irreparable harm if preliminary injunctive relief is not granted. She lacks the financial resources to take care of her most basic needs. She was

12

evicted from her apartment earlier this year because she could no longer afford the rent, and her present living situation is also precarious. Doc. #10, PageID#119-20. She cannot afford to wait to collect damages after this litigation is fully resolved.

### C.  Substantial Harm to Others

The third factor to be considered is whether granting the request for a preliminary injunction will result in substantial harm to others. The only person who would be harmed by the requested relief is Defendant. However, given that he agreed to provide financial support to Plaintiff when he signed the I-864 Affidavit of Support, this factor weighs heavily in favor of Plaintiff.

### D.  Public Interest

The final factor to be considered is whether the granting of a preliminary injunction would be in the public interest. It is clearly in the public interest to enforce Defendant's obligations under the I-864 Affidavit of Support, given that Plaintiff is currently relying on public assistance. This is the very same risk that Congress sought to eliminate when requiring such Affidavits of Support for family-based immigrant visas.

For the reasons set forth above, the Court SUSTAINS Plaintiff's Motion for Preliminary Injunction, Doc. #9. Defendant is ORDERED to make monthly financial payments to Plaintiff in the amount of 125% of the Federal Poverty Guideline for a household of one (currently $1,416.00), minus her income for the immediately

13

prior month. He shall transmit such monthly payments by wire transfer to the client trust account for Plaintiff's counsel on the first business day of each calendar month. Said monthly payments shall continue until this civil case is resolved or until the occurrence of one of the five terminating events set forth in the Affidavit of Support.

## IV. Bond

Fed. R. Civ. P. 65(c) provides that, when the court issues a preliminary injunction, the movant must give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Plaintiff argues that, in her case, no bond should be required because of her precarious financial situation. Defendant does not object to this argument.

The Court finds that, because of Plaintiff's dire financial situation and the fact that she has shown that injunctive relief is clearly warranted, it would not be proper to require her to post a bond.

## V. Attorney Fees

Among the remedies available to a plaintiff seeking to enforce an Affidavit of Support are the "payment of legal fees and other costs of collection." 8 U.S.C. § 1183a(c). Plaintiff seeks an order requiring Defendant to pay $13,806 in attorney fees incurred in connection with this litigation thus far.

Defendant argues that attorney fees are not warranted. He contends that, because Plaintiff chose to litigate this matter in federal court even though it could have been litigated in the context of the state court divorce proceedings, she has wasted judicial resources and unnecessarily forced him to expend additional attorneys' fees. He maintains that the duplicative nature of this lawsuit renders any award of attorney's fees inherently unreasonable.

The Court disagrees. As previously noted, Plaintiff was not required to litigate her I-864 claim in the context of the divorce proceedings. Moreover, there is nothing in the record to support a finding that it would have been more cost-effective for her to do so. In addition, the record shows that Plaintiff's counsel, Greg McLawsen, gave Defendant the opportunity to voluntarily comply with his financial obligations under the I-864 prior to filing this lawsuit and, again, prior to filing the Motion for Preliminary Injunction. Because Defendant repeatedly rebuffed those informal attempts, he caused Plaintiff to incur thousands of additional dollars in legal fees to enforce her rights.

Given the circumstances presented here, the Court SUSTAINS Plaintiff's request for attorney fees. The Court notes that Defendant has made no objections either to the $600 hourly rate charged by Plaintiff's counsel nor to the number of hours expended on the Motion for Preliminary Injunction.

Having reviewed the C.V. of Plaintiff's counsel, Doc. #11-2, his affidavits, Docs. ##11 and 24, and the billing records, Docs. ##11-1 and 24-1, the Court finds that the fees requested are reasonable. Mr. McLawsen, whose law firm is located

15

in Seattle, Washington, has practiced law for thirteen years and specializes in immigration law. More specifically, he specializes in enforcement of I-864 Affidavits of Support. He has served as a consulting expert, written articles and taught CLE classes on this topic. The Court further finds that the number of hours expended by Mr. McLawsen are reasonable, particularly given Defendant's repeated refusals to attempt to resolve the matter informally. Accordingly, the Court ORDERS Defendant to pay Plaintiff's legal fees in the amount of $13,806.00.

### VI. Conclusion

For the reasons set forth above, the Court SUSTAINS Plaintiff's Motion for Preliminary Injunction, Doc. #9, without requiring Plaintiff to post a bond.

Defendant is ORDERED to make monthly financial payments to Plaintiff in the amount of 125% of the Federal Poverty Guideline for a household of one (currently $1,416.00), minus her income for the immediately prior month. He shall transmit such monthly payments by wire transfer to the client trust account for Plaintiff's counsel on the first business day of each calendar month. Said monthly payments shall continue until this civil case is resolved or until the occurrence of one of the five terminating events set forth in the Affidavit of Support.

Defendant is further ordered to pay $13,806.00 to Plaintiff's counsel for legal fees incurred in connection with the Motion for Preliminary Injunction.

Date: December 8, 2022

*[signature]*

WALTER H. RICE
UNITED STATES DISTRICT JUDGE